H. & E. HARTMAN & CO. v. R. P. SPIERS.

*Homestead—Allotment of.*

1. The proceeding to have the allotment of the homestead made by the appraisers reviewed by the Board of Township Trustees, under Bat. Rev., ch. 55, §§20, 21, must have been made before the sale of the excess under the execution.

2. After the repeal of this act, the homesteader might have had the action of the appraisers reviewed by a *recordari* or by a motion in the cause.

3. A homestead was laid off to a judgment debtor, with which he was dissatisfied, after the repeal of the act allowing an appeal to the Township Board of Trustees. After the enactment of §519 of The Code, the homesteader attempted to have the action of the appraisers reviewed under the provisions of that section ; *It was held*, that he had lost his remedy by the failure to move in the manner allowed by law, before the sale of the excess.

(*Ballard* v. *Waller*, 7 Jones, 84 : *Leatherwood* v. *Moody*, 3 Ired., 129 ; *Burton* v. *Spiers*, 87 N. C., 87 ; *Webb* v. *Durham*, 7 Ired., 130 ; *Heptinstall* v. *Perry*, 76 N. C., 190, cited and approved).

This is a proceeding by the defendant, under section 2, chapter 357, of the laws of 1883, to revise the allotment of his homestead, made on or about the 20th day of April, 1881, under executions issuing upon judgments docketed in the Superior Court of Halifax, in favor of·the plaintiffs and against the defendant, heard before *Graves, Judge,* at Spring Term, 1885, of HALIFAX Superior Court.

The notice of appeal, together with a copy of the appraisers' return of the allotment of homestead, was served on the 15th day of March, 1883.

At Fall Term, 1883, the plaintiffs moved to dismiss the proceeding, upon affidavit, upon the ground that a motion upon affidavit was then pending in the original cause to amend the record and set aside the allotment of homestead aforesaid, and the sale of the excess of defendant's land under said executions, and to have a re-allotment of the homestead. That proceeding was instituted February 28, 1883. Thereupon, the motion in the cause was dismissed, the defendant not objecting, at Fall Term, 1883, and the defendant was allowed, against the objection of the plaintiffs, to file additional exceptions in this proceeding, which were as follows:

He objects to said allotment:

1. In that the specific property set apart to him, was allotted against his protest, and did not embrace the dwelling-house of the defendant.

2. In that the appraisers refused to allot to him property selected by him as and for a homestead.

3. In that the property in which his homestead was allotted, was at the time, covered by a deed of trust, securing debts of about three times the value of the property, and by a mortgage securing debts of about eight times the value of said property.

4. In that he protested against the allotment to him of a homestead in property encumbered by said deed of trust and mortgage.

5. In that the appraisers refused to investigate the encumbrances upon his property, although requested by him so to do.

6. In that the appraisers refused to take in consideration said encumbrances in alloting to him a homestead, although requested by him so to do.

7. In that the appraisers had no power or authority to set apart to him a homestead in property encumbered as aforesaid.

8. In that the equity of redemption in the property allotted was not worth one thousand dollars.

At Spring Term, 1885, this proceeding came on to be heard, and on the hearing, it appeared that the excess of the defendant's land, over and above said allotment of homestead, was sold on the 1st day of August, 1881, under said executions.

It also appeared that the defendant appealed within ten days from the allotment of his homestead, to the Board of Commissioners of Halifax county, he being advised and believing the Board had appellate jurisdiction, which appeal came before the commissioners for hearing, at their meeting on the 1st Monday in June, 1881, when they dismissed it for want of jurisdiction. Thereupon, the defendant appealed from the order of dismissal to the Superior Court of the county, but paid the Clerk of the Board no fees for sending up the record, and never requested him to send it up. Said record, on appeal, was not sent up to Fall Term, 1881, of the Court, and no steps were taken by defendant at said term to have the appeal sent up. At November Special Term, 1881, the defendant applied to his Honor, Judge Gilmer, for a writ of *certiorari*, without notice to the plaintiffs, to remove the proceedings into the Superior Court. His Honor granted his *fiat*, but the defendant was required to file a bond in the sum of one hundred dollars, before the clerk should issue the writ. On the back of said *fiat*, the counsel of the defendant endorsed, " Don't issue the writ till further instructions from R. P. Spiers," and signed the same. Such instructions were never given, the bond was never filed and the writ never issued. But at their February meeting, 1882, the commissioners sent up their record, and at March Term, 1882, this proceeding was consolidated by his Honor Judge Bennett, with the ejectment suit of R. O. Burton, Jr., against R. P. Spiers, brought to recover the excess purchased by said Burton at the execution sale. On appeal to the Supreme Court this order of consolidation was reversed. (See *Hartman* v. *Spiers*, 87 N. C., 28, and *Burton* v. *Spiers*, 87 N. C., 87). Thereafter the *certiorari* proceedings were dismissed, and on the 28th day of February, 1883, the defendant gave notice of the aforesaid motion in the cause, which was dismissed at Fall Term, 1883, as aforesaid.

It further appeared that the excess was purchased by Robert O. Burton, Jr., attorney for the plaintiffs, at said execution sale, and the sheriff's deed executed to him therefor, and he still claims title under this sale, and that he had notice of the several efforts of the defendant to obtain a re-allotment of his homestead.

Thereupon the plaintiffs moved to dismiss the proceeding, and the Court gave the following judgment:

"This cause coming on to be heard, it is, on motion of the plaintiffs' attorneys, ordered and adjudged that this proceeding, it being an appeal by defendant Spiers from the allotment of his homestead taken after the sale of the excess by the sheriff, be and the same is hereby dismissed.

"It is further adjudged that the plaintiffs recover of the defendant R. P. Spiers, and his surety on his bond, the costs of this proceeding, to be taxed by the Clerk."

From this judgment, the defendant appealed.

*Messrs. Spier Whitaker* and *R. O. Burton, Jr.*, for the plaintiffs.
*Messrs. John A. Moore, W. H. Day* and *R. B. Peebles*, for the defendant.

ASHE, J. (after stating the case).    At the time the defendant's homestead was laid off, there was no provision by law for his appeal from the allotment of the appraisers.    Prior to the act of 1876-'77, ch. 14, a homesteader, if dissatisfied with the appraisement, had the right of appeal to the Board of Township Trustees; but by that act, the Board of Trustees was abolished, and the homesteader was put to such other means of relief as were given by the law.    As the appraisers were not a court of record, the party deprived of his appeal, had the right to bring his case before the Superior Court by a writ of *recordari*.    *Ballard* v. *Waller*, 7 Jones, 84; *Leatherwood* v. *Moody*, 3 Ired., 129; *Webb* v. *Durham*, 7 Ired., 130.    This was a means provided by law for having the proceedings before the appraisers reviewed, of which the defendant might have availed himself, but he failed

to do so.   Instead of applying for the writ of *recordari*, he applied for a *certiorari*, but even if that might have availed him, after obtaining the *fiat* of the Judge requiring him to give a bond, no bond was ever given, and no other steps taken by him to obtain the writ.   It was never issued, but was stopped by the intervention of his counsel.

There was yet another remedy for the defendant, as prescribed in the case of *Burton* v. *Spiers*, 87 N. C., 87, of which the defendant might properly have taken advantage, if he had prosecuted the matter to a final determination.   This Court there held, that the proceedings by the appraisers, were required to be returned by the officer, to the Clerk of the Court for the county in which the homestead is situated, and filed with the judgment-roll in the action, and a minute of the same entered on the judgment docket.   Bat. Rev., ch. 55, §4.   This direction, said the Court, as to the disposition to be made of the report of the exemption, is not to give notice of its extent only, *but to subject it to a motion made in reasonable time to set it aside.*   But the motion, as was said, should be made in a reasonable time—that must mean at the first opportunity the defendant might have to make his motion.   It is true, the defendant did make his motion to have the allotment of homestead and the sale of excess under execution set aside, and to have a new allotment; but this was not done until the January term, 1883, more than two years after the allotment had been made, and the excess sold under execution.   But the defendant, after the act of 1883, hereinafter recited, took an appeal under that act, and allowed his motion in the cause to be dismissed without objection.

The law in force at the time the allotment was made, required that the debtor, dissatisfied with the valuation of the allotment of the appraisers, might, within ten days thereafter, *and before sale under execution of the excess,* file a transcript of the return of the appraisers with the Clerk of the Board of Township Trustees, who was required to notify the Board of Township Trustees, who might re-assess and allot the homestead—Bat. Rev., ch. 55, §20 —and make their returns as provided in §21.

It will be seen from this act, that the proceedings to have a re-assessment, must be had *before a sale under the execution.*

But the defendant says that he was deprived of this remedy, by the abolition of the Board of Township Trustees, and the Legislature has come to his relief, by passing the Act of 1883, ch. 357, §§1–2, which gives him the right of appeal to the Superior Court.

That act is as follows:

"SECTION 1. That if the judgment creditor, at whose instance the personal property exemption or homestead of his judgment debtor shall have been allotted, or the said judgment debtor, shall be dissatisfied with the valuation and allotment of the appraisers or assessors, as the case may be, either of them may, within ten days thereafter, or any other creditor, if dissatisfied, within six months thereafter, and *before sale under execution of the excess,* notify the adverse party and the sheriff having the execution in hand thereof, and file with the Clerk of the Superior Court of the county where the said allotment shall be made, a transcript of the return of the appraisers or assessors, as the case may be, which they, or the sheriff, shall allow to be made upon demand, together with his objections, in writing, to said return, and thereupon the said clerk shall enter the same on the civil issue docket of the said Superior Court, for trial, to be had at the next term thereof, as other civil actions, and the sheriff shall not thereupon sell the excess until after the determination of said proceeding.

"SEC. 2. That any creditor or debtor who is dissatisfied with the allotment of any homestead or personal property exemption, made since the abolition of the Board of Township Trustees, may have the same appealed to a regular term of the Superior Court of the county where the property was situated, under the provisions of this act; *Provided, however,* that no one' shall be entitled to an appeal under this section, who has not already taken steps to have such allotment revised in some way."

The two sections of the act must be construed together. They are parts of a whole. The latter section refers to the first, and

gives the right of appeal, *under the provisions of this act,* to any one who has already taken steps to have such allotment revised in some way. But one of the provisions of the act is, that the appeal must be taken *before sale under execution of the excess,* and this was a provision in the act of 1868, Bat. Rev., ch. 55, §20, and no doubt the reason of this provision was, that the Legislature did not mean to allow the title of the purchaser to be disturbed, after a sale of the excess by the sheriff. This was the construction given to the act of 1868 in the case of *Heptin-stall* v. *Perry,* 76 N. C., 190. There, the plaintiff recovered a judgment against the defendant, executions issued thereon, and the homestead of the judgment debtor was laid off. About six months after the sale of the excess by the sheriff, the plaintiff, becoming dissatisfied, requested a re-allotment of said homestead, and to that end applied for a mandamus to the Township Board of Trustees, which was refused by the Judge, and the defendant appealed. READE, Judge, delivering the opinion of the Court, said, "The statute is so plain as to leave no room for construction. The application for re-assessment and allotment of homestead, must be before the sale of the excess by the sheriff. Bat. Rev., ch. 55, § 20." The same construction must be given to the act of 1883, for their provisions are the same in this respect. The second section of that act, then, was insufficient for the purpose intended to be effected by it, after the excess had been sold under execution; and this was probably the reason why the Legislature, in incorporating the act of 1883 in The Code, omitted the second section of the act, although The Code and the act of 1883 were adopted at the same session of the Legislature. The Code, §519.

Our conclusion is, the defendant has lost his right to have a re-allotment of his homestead, by his own fault in not having resorted in time to the means of relief which the law afforded him.

There is no error. The judgment of the Superior Court is affirmed.

No error.                                        Affirmed.